The first case before us is 20-5100, Bryan v. Dowling, Ms. Penix. You can hear me? Good, good. Good first step. Are you ready to proceed? I am, Your Honor. Thank you. We didn't hear you for a moment, but now your mic's on. Good, good. Yes. You may proceed. May it please the Court, I am... I'm getting a lot of feedback. I'm sorry. Try again. See what happens. Okay. May it please the Court, I am Kimberly Penix. Okay. Proceed. We want to give you your full time. Thank you. May it please the Court, I am Attorney Kimberly Penix, appearing as counsel for Johnny Cash Bryant. Mr. Bryant was charged in this case with one instance of inappropriately touching a girl over her clothes. He was convicted and sentenced to 99 years of incarceration. How did this happen? The prosecution brought in another accuser who testified Mr. Bryant had molested her many years earlier, although that had never resulted in any charges. Nonetheless, the prosecutor invited the jury in opening and closing statements to convict and sentence Mr. Bryant for the past alleged actions, focused on the allegations in questioning, and asserted in closing that there were multiple victims in this case, including the other accuser. Mr. Bryant seeks relief for this improper conduct through habeas. This Court has first asked whether Bryant adequately raised his prosecutorial misconduct claim before the state court such that it can be challenged in habeas. On direct appeal, Mr. Bryant, through counsel, complained of prosecutorial misconduct. You lost the picture. I'm sorry? We couldn't see you for a moment. I probably shouldn't have interrupted. As long as we can hear you, that's the important thing. So please proceed. On direct appeal, Mr. Bryant, through counsel, complained of prosecutorial misconduct based on these actions and others, but it was under an argument header about improperly admitted evidence. So the Oklahoma Court of Appeals chose not to consider the claim substantively, deciding instead that appellate counsel had combined arguments and therefore waived them. So Mr. Bryant raised a standalone prosecutorial misconduct claim in his first pro se post-conviction motion, but the state court rejected that one because appellate counsel had failed to raise it properly on appeal. So Mr. Bryant filed a second pro se post-conviction motion, alleging ineffective assistance of appellate counsel for not properly raising the prosecutorial misconduct claim. Again, the state court denied the claim, this time on the merits, and determining that appellate counsel was not ineffective for failing to properly raise the misconduct claim. Counsel, are you saying that the issue was raised as far as appellate counsel being not effective? Is that what you're saying now happened already before the Supreme Court of Oklahoma or the Court of Appeals? Yes. Can you show me in the record where that actually is? Because he raised the issue of trial court ineffectiveness before the Oklahoma Court of Appeals, but I did not see where that has been yet raised specifically as to the ineffective assistance of appellate counsel before the Oklahoma Court of Appeals. I'm not sure if it went before the Court of Appeals or just the trial court. I can say that from my reading, all I can see is just the trial court was the ineffective assistance of counsel, not the Court of Appeals counsel. Am I correct or is there a difference? I don't recall offhand. I know that there was an adjudication that appellate counsel was not ineffective, although it was without a hearing and not fully. Counsel, this is extremely important to me because I understand your argument and what's going on here, and it's pretty strange to me. The problem is do we have a remedy that we can have? So even at the district court, federal district court judge denied the claims and then it creates kind of an interesting jurisdictional question maybe too, but then reopened to raise the issue of appellate court ineffectiveness. Now, have I got it mixed up or am I messed up? I'm not sure, but I'd like to circle back around to that if you don't mind. Go right ahead. I wanted to be sure I'm following your argument because like I say, this is an interesting case. It's kind of messed up, but I want to be sure that we're getting it straight. Thank you, counsel. I know we do have a ruling from Oklahoma that appellate counsel was not ineffective, but I see your point. Was that ruling out of the trial court or was it out of the appellate court? And I thought that it was out of the appellate court, but now that you say that, I don't remember seeing an appeal from that second post-conviction motion. So I will try to answer that question before we leave here today. So Mr. Bryant then raised his prosecutorial misconduct claim at issue here. He referenced the same factual underpinnings, but the district court determined that given his appellate attorney's failure to properly raise the claim on direct appeal, his claims were procedurally barred. So now he appeals to this court to free him from this procedural morass such that his prosecutorial misconduct claim can be finally considered on the merits at last. The point of the procedural default bar is to ensure that the state court has the chance to rule substantively on an issue before the issue proceeds to habeas and is subject to federal review. The state court has certainly had that chance repeatedly but does not want to. The point of habeas is to give federal review when a state is dropping the ball on a legal precedent that is well-established, fundamental, and important as is the case here. Oklahoma has not been denied the opportunity to fix the problem here and therefore a procedural bar is inappropriate. But this court asked second whether if the procedural bar applies, appellate counsel's failure to raise the issues properly on direct appeal excused that bar as to a prosecutorial misconduct claim. It's well-established that ineffective assistance of appellate counsel excuses procedural default on a claim when Petitioner 1 raises an effectiveness claim before the state court and 2 shows deficient performance. The people concede that Mr. Bryant raised these claims in his second post-conviction motion. So the first prong is not at issue and I will get back to whether that was appealed because I'm not sure offhand. As to whether appellate counsel's performance fell below prevailing standards of professional norms when counsel did not raise the issue of prosecutorial misconduct, in particular for eliciting a conviction and sentence based on uncharged allegations of salacious past conduct, this turns on the merits of the omitted issue which segues into the third issue on which this court requested briefing. The court asked third whether the prosecutorial misconduct claim is meritorious. As to the third question, although the evidence was offered for other purposes, the effect given the prosecutor's arguments was that Mr. Bryant was put on trial for a litany of offensive conduct rather than just for the one instance in the charged complaint. This is the only possible explanation for his being convicted and sentenced to 99 years of imprisonment on a first offense of unlawful touching over clothes. The prosecutor in opening asked the jury to convict Mr. Bryant and sentence him to at least 25 years for his alleged offenses against both purported victims. The one in the charged act and the one testifying to other bad acts. And then in closing, the prosecutor again referred to multiple victims in this case even though Mr. Bryant was only charged with the one instance with the one victim. Are you saying that the earlier offense couldn't be considered by the jury in sentencing? They may be—that's a good question. At the very least, they should not be asked to sentence based on and for those events. And no, I don't think they should.  The jury may have convicted only because it found beyond a reasonable doubt that the more recent allegations were true, but then decided that a very substantial sentence was appropriate because this person was a repeat offender. And what's wrong with that? Because he was never charged or convicted with the first—with the bad acts, the past bad acts. And they were specifically instructed to only use the evidence of past bad acts to decide towards the conviction—to decide towards intent, motive, and a couple of other purposes. So I feel like it's more questionable whether the jury instructions fixed it so much as the conviction went, if they used the past bad acts towards the conviction, but there were no corrective instructions in terms of using the past bad acts towards the sentence. So if we reverse, what would happen? There would be a trial only on the sentence? Well, I think it depends on a couple of things happen. One, you can send it back down for an evidentiary hearing at the district court level on the ineffectiveness of appellate counsel because there has never been a fact-finding hearing. No one has ever testified as to professional norms, whether appellate counsel made reasonable choices. No one has ever asked appellate counsel if there was a strategic reason for omitting that issue or conflagrating it with the other issues. I do think that from the record, you could determine that appellate counsel was ineffective because you have at least the Oklahoma Court of Appeals finding that appellate counsel waived the issue, but you can't find from the record that appellate counsel wasn't ineffective without an evidentiary hearing. Of course, your other choices are to reverse the conviction if you think that it is reasonably likely that the conviction was based at least in part upon the prior bad acts, and you could also just remand for sentencing because the sentencing looks pretty starkly disproportionate and very likely based on the past bad acts. Counsel, I'm having a very hard time getting to where you're asking us to go since we're particularly here on habeas. Now, I've got to come back because I really understand your argument, but we've got to handle this in a habeas proceeding. And again, I come back to say, OK, what gives us authority to do what we need to do legally under the statute? Now, the ineffective assistance of counsel from the appellant, that's why they said you have not raised that issue yet. So that means that it would probably have to go, if that's true, for us to do anything, we would have to send it back. But then we have the, I'm looking at a case that calls it procedural, anticipatory procedural bar. Have you read those cases in regards to that, as to if we send it back, we have the authority before we do that of saying, look, since this hasn't been raised, the Oklahoma Court of Criminal Appeals is going to say, no, it wasn't raised. And we would say that it's an anticipatory bar. Are you familiar with those cases? Not enough that I can intelligently discuss them with you. But I do want to add that that second post eviction motion did go up on appeal. And it's in, I have it in the sealed court record. I'm not sure how I would refer you to that. But it's page 232 is the order. The court said that they had not handled that issue on the basis of prosecutorial misconduct. Ineffective assistance was raised, but not on the basis of prosecutorial misconduct. They're saying we haven't seen that yet. But I don't want to, I think you and I are going across paths, and I don't want to confuse myself anymore, or you. So I'll let you go ahead. Thank you. Well, let me interject here. I'm looking at the federal district court's order on page 23. And it says, nevertheless, the OCCA effectively adjudicated the merits of this claim when it applied Strickland and Logan to reject his claim that appellate counsel was ineffective for failing to raise a prosecutorial misconduct claim on direct appeal. Is that correct? It's saying, as I understand this, it's saying that the OCCA addressed the issue of appellate ineffectiveness for failure to raise the prosecutorial misconduct claim. Yes. But it rejected that claim of prosecutorial misconduct because it found that there was no merit to the prosecutorial misconduct claim. And I don't see why we needed an additional hearing on that. Why was that not a decision on the merits by the OCCA that we have to defer to? I have only seen a finding from the OCCA as to the ineffectiveness of appellate counsel. Yes, yes. But it ruled that appellate counsel was not ineffective because in its presentation of the failure to the counsel was not ineffective for failure to pursue the prosecutorial misconduct claim because the prosecutorial misconduct claim was meritless. And that's something that appellate courts do all the time without an additional evidentiary hearing. We had a hearing on the prosecutorial misconduct issue. The record is fully developed there. Why wouldn't we defer to the OCCA's determination that there wasn't merit to the prosecutorial misconduct claim? Therefore, there's no merit to the failure to appeal on that basis of prosecutorial misconduct. To the extent that the OCCA rejected the prosecutorial misconduct claim on the merits or substantively, I would say it was because the holding is contrary to clearly prevailing law. But you agree we would still defer to it. That's the standard. The standard is not whether we would disagree with the OCCA on that ruling, but whether the OCCA's ruling was unreasonable or contrary to established law. Is that right? Yes. I do think that it was unreasonable and contrary to established law. You're over time, and I want to be a little generous with your time because of the technical difficulties. But why don't we stop you there and let the government respond. So, Mr. Lockett. You may proceed. May it please the court. My name is Joshua Lockett, and I represent the respondent in this case, Ms. Janet Dowling. We're here because the petitioner was convicted following a jury trial of one count of lewd molestation of his ex-wife's granddaughter, a granddaughter who was only six years old at the time. Evidence at trial showed that the petitioner committed this offense in the home of his ex-wife, in the same bed where his ex-wife was asleep at the time, after specifically being told by our little victim's mother, you do not come in this house because we know what you've done in the past. The grandmother in the bed, wasn't it? It was the grandmother in the bed, but it was the daughter. Again, we've got three generations at play here. He said it was the mother in the bed. It was the granddaughter. I'm sorry. If I said that, I was mistaken. You're right. It was Ms. LaVonna Bryant, who was in bed. Counsel, were you trial counsel in this matter? I was not trial counsel in this matter, sir. Well, we traditionally don't shoot the messengers. For this contemptible act, the petitioner was sentenced to 99 years in prison, and following his conviction, he raised an ever-evolving list of claims to the Oklahoma Court of Criminal Appeals. But it's the procedural deficiencies of one of those claims, and we've already discussed it here today, prosecutorial misconduct, which is going to occupy our time here. An analysis of that claim shows two things to be true. First, the claim is procedurally defaulted for purposes of federal habeas review, and second, there is no excuse, there is no gateway, to allow consideration of the merits of that claim. And with that in mind, I'd like to turn to the first COA that was granted by the district court in this case. As I stated before, the petitioner raised many claims to the Oklahoma Court of Criminal Appeals, and hopefully, Judge Baldock, this will kind of help clear up the mess that is actually in this case, procedurally speaking. One claim that was never raised to the Oklahoma Court of Criminal Appeals was a stand-alone claim of prosecutorial misconduct. The northern district certified three questions for appeal, and the first one was whether the procedural default doctrine bars the prosecutorial misconduct claim asserted in Claim 2 of the amended petition. Now, the state's always contended that the answer to that question is yes, and given his briefing, in his opening brief, it appears that the petitioner feels the same way. He says that he raised this claim of prosecutorial misconduct in the state court, but only under the umbrella of ineffective assistance of appellate counsel. In a footnote, he chastised the state for even pointing out and arguing that it had never been raised, because he says, the state of all people should know that I could not raise a stand-alone claim like that in a post-conviction appeal, because it would be found waived. The supplemental briefing kind of bypasses this question altogether and just analyzes what can be used as an excuse. Do you agree that we can review ineffective assistance of appellate counsel claim? I would agree that you can only review the ineffective assistance of appellate counsel claim as to cause for the petitioner's failure to raise the stand-alone claim of prosecutorial misconduct in the state court. So there does appear to be a consensus that this is procedurally defaulted. So, we're confused. You're confused? Well, let me maybe go a little bit further, and hopefully it will clear it up, and if you have any questions, I'm more than happy to answer anything. Yes, we ask questions. The state has always contended that this claim is unexhausted, and the burden is on the petitioner to show that it is exhausted. Just tell me exactly what it is that we're saying is procedurally, because you've got mixed into here failure to raise the ineffective assistance of appellate counsel as to prosecutorial misconduct. That, to me, is where I am at at the end of this. Okay. Not just ineffective assistance of counsel, but in this issue, was the issue raised at any time in the state court as to ineffective assistance of counsel as to prosecutorial misconduct? Yes. Tell it. Okay. Yes, Your Honor. So, in the state district court, he filed his post-conviction application for relief, and that contains several claims. It contained a stand-alone prosecutorial misconduct claim. It also contained ineffective assistance of appellate counsel for failing to raise prosecutorial misconduct. But in between, here's where we run into some problems, because he's got, the way I see it is he has three PC appeals. He has his first one where he raised those claims that I just said in the state district court, but he was not able to appeal that because of a jurisdictional defect. He didn't file his notice of intent to appeal in time. And so he goes back to the state district court. He's granted an appeal out of time by the state district court, and then he appeals in what I refer to in my brief as the first substantive PC appeal. He has shifted his claims. He no longer has individual stand-alone claims of prosecutorial misconduct or any other claims. He's only raising at that point actual innocence and claims of ineffective assistance of appellate counsel. And it's really important to understand exactly what claims he raised then, because the state contends that those specific claims of ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct can now be utilized as cause to excuse the procedural defect. But can it also be used to get relief? Can you get relief from your conviction if you show that your appellate counsel was ineffective? No, Your Honor, because that's not... I'm sorry? I just said you can't. That surprises me. I thought you could. Given the procedural posture in which this way has made its way to this court, the only issue that we're considering right now is the prosecutorial misconduct claim. No. You disagree? You think that it's also... There are two issues. One is, can we consider the prosecutorial misconduct claim? And you're right. Ineffectiveness, if that claim was not preserved before the OCCA on direct appeal, when it should have been raised, then we could still consider it if we show cause because of ineffective assistance of appellate counsel. But there's a second independent ground for granting relief, I would have thought, and that is not just that ineffectiveness of appellate counsel gave cause to allow our review of the prosecutorial misconduct claim, but that's an independent basis for granting relief from the conviction if there's ineffectiveness... if there's a claim of ineffective assistance of appellate counsel, which the OCCA, did it address or not? It addressed ineffective assistance of appellate counsel as to three specific claims. The two NAPU claims that the petitioner raises and this claim that goes to the opening argument. And I apologize. I may have misunderstood earlier. No. I'm sorry? I'm sorry. Go ahead. When I said that no, ineffective assistance of counsel, my understanding is that that method or remedy of relief lies outside the COA in this case. And now I understand that this court may, for whatever purposes, expand the COA, but the COA that's granted in this case only goes to the prosecutorial misconduct claim. You just said something that surprised me. Maybe I misunderstood you. But are you saying that the ineffective assistance of appellate counsel claim that was considered by the OCCA was ineffective assistance of appellate counsel with respect to issues other than prosecutorial misconduct? I thought it did consider ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct. Didn't it raise that? Yes. And those three claims that I just listed were the only ones raised in the first substantive post-conviction appeal. Okay. There was a second substantive post-conviction appeal that followed. And if you go back and look at the – It's on that appeal that the OCCA considered the claim of ineffective assistance of appellate counsel for failure to raise the prosecutorial misconduct claim. Is that correct? No. My understanding is somewhat backwards. And part of the problem lies in the fact that the Northern District, when it was reviewing this issue, it conflated. It messed up and said, okay, this petitioner has raised these issues to the Court of Criminal Appeals, and the issues that it listed are not what the petitioner raised in his first substantive post-conviction appeal. It's citing back to the issues that he raised to the State District Court. But did the OCCA ever in any opinion say, no, there was not ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct because we don't think there was reversible error from prosecutorial misconduct, so the failure to raise that issue was not ineffective? Yes. And when did it do that? In what I refer to as the first substantive post-conviction appeal. Why, then, isn't that issue properly preserved for consideration on habeas? You're saying because we didn't grant a COA on that issue? Okay, that's where I think I misunderstood you earlier. Yes, ineffective assistance of appellate counsel can be a grounds for habeas relief. But I was looking at this in what is granted in the COA. And that issue of ineffective assistance of appellate counsel is not its own stand-alone constitutional deficiency that was being analyzed in this case. Again, I can see that this Court can, if it desires, look into that. But whether it wants to look into it. But we'd have to grant a COA. I'm sorry? But we would have to grant a COA. Yes, because if we did, we could consider. Pardon me? We have to expand. Yes. Yes, Your Honor. I'm sorry. Thank you. That's more accurate, what Judge Seymour said. So why don't you make an argument why we shouldn't grant a COA, why we shouldn't expand the COA for that, or why that's not a meritorious? Well, if you were to look at, again, those claims that can be utilized as cause. Again, it's only the three claims. The two NAPU claims regarding Ms. Yeoman's allegations, which the petitioner. Just restrict yourself to prosecutorial misconduct. Okay. So are you referring to the opening statement? Well, there are lots of components to the prosecutorial misconduct. The gist of the claim, as I understand it, is the prosecutor kept repeatedly saying, you can convict for the abuse of the mother as opposed to the child. But here's the thing. It was in that first substantive PC. So the only thing that could actually serve as cause for the default in this case, the only thing he raised in that first substantive PC to the Oklahoma Court of Criminal Appeals was the opening statement. It's only about that first half of his ground two below. So when you acknowledge that the OCCA addressed a claim of ineffective assistance of appellate counsel for failure to raise prosecutorial misconduct, but the only prosecutorial misconduct that allegedly wasn't appealed was what the prosecutor said in opening statement? That's correct, yes. So all the other alleged misconduct of the prosecutor that is in the briefing here, none of the rest of that was ever presented to the OCCA? It was presented in the second substantive post-conviction application that the Oklahoma Court of Criminal Appeals did not consider on the merits. Okay, okay. Let's dig down into the merits of that opening statement. Again, it is a procedural mess. This case is a nightmare. But when you look at that comment by the prosecutor in opening statement, first of all, it's just one sentence, one sentence in which he says it's going to be enough for you to look over and convict this man of a minimum of 25 years of abuse towards Megan and towards our victim in this case. An objection was made. An objection was made, Your Honor. And it was overruled. You're correct, it was. And the State does not condone that statement in any way. But there were several times after that where, even if the jury's understanding of what it could use to convict the petitioner was somehow led astray right then, there were multiple times after that where both counsels and the trial court reoriented and refocused what the jury could consider all those prior actions from back in the late 90s that the petitioner had committed upon. Well, then tell me how did the jury get, or how did we get to 99 years in jail on a 45-year sentence unless they doubled it up for the daughter and the mother? Well, here's the thing. Because, first of all, you look at that sentence and ask yourself, what is the prosecutor asking for there? Is that a, because the only thing he's asking for there is a minimum of 25 years. And if for whatever reason you think that the jury might have considered that prior, those prior allegations of abuse, that was properly admitted evidence. The Oklahoma Court of Criminal Appeals did consider that on direct appeal. And they said, you know what, this is properly admitted. There's nothing wrong here. And so, like I said, this is just one sentence. And several times thereafter, I want to point out some of them to you. During the State's second closing, he states, I didn't call Megan to testify so that you convict Johnny Cash Brant Sr. of what happened back in the 90s. I called her to testify so that she could tell you how he lusts and sexually abuses children and has going back to the 90s. Don't convict him for that. I assume that my time is up here. I'm happy to stand here and answer any more questions. But there were several times that the jury's focus was reoriented, and the respondent would respect. And you'll concede that there were also times when it was reoriented by misstatements by the prosecutor later in the trial. If you go back and look, again, I think what you're maybe referencing is the time where the prosecutor reversed to victims in the plural. I don't remember the specifics. I got a sense of what was going on. An objection was posed, and that objection was sustained by the trial court. One of the last things that the jury heard before it went out to deliberate was that there is only one victim in this case, and it was our little six-year-old victim. So the respondent would request, in light of all those things, that this court affirm the denial of habeas relief out of the Northern District of Oklahoma. Thank you. I'm going to give Ms. Penix a couple minutes to respond to some of this. Maybe I'll start with the question. Do you agree that the OCCA never addressed a claim of ineffective assistance of appellate counsel with respect to alleged prosecutorial misconduct other than the prosecutor's statement in the opening at the trial? Is that correct? Mostly. I think that what you're saying is did the Oklahoma Court of Appeals get to consider prosecutorial misconduct in full, comprehensively, the way we're arguing it today, with the comments throughout trial, the way the testimony was elicited, and the closing statements as well? No, that never happened. There were other allegations of prosecutorial misconduct which aren't at issue here, which it took a look at. I'm sorry, other allegations of ineffective assistance, but that aren't at issue here. But I do see that the state is trying to winnow it down to just that opening statement. Fine, prosecutorial misconduct is considered in light of the context of the whole trial. Well, the rest of the trial had other instances, as you mentioned, and are well aware from the briefing. Before I run out of time, again, I want to point you to two particular orders that I think would help you in your analysis. I have a document called Sealed Record here, and I'll tell you the page numbers, but I'll also give you the dates of the orders so that you can pull them from the docket if you wish. The first is the Oklahoma Court of Appeals order on Mr. Bryant's first pro se, and I'd like to say pro se because all of this stuff is pro se, and that's why it's a mess, order on his first pro se post-conviction motion. That's from June 21, 2017. That's on page 226 of my Sealed Record file. The second is on page 226, and that dates to June 21 of 2017. And then the second is the Oklahoma Court of Appeals order on the appeal from his first post-conviction motion, and that's on page 232 of what I have titled Sealed Record, but the date is, if that doesn't lead you to it, November 21 of 2017. Thank you, counsel. Thank you, your honors. We've got some work to do on this, but thank you, counsel. Cases submitted to counsel are excused.